## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

EDSAL MANUFACTURING
COMPANY,

              Plaintiff,

              v.

FREEDOM PLASTICS, INC.,

              Defendant.

Case No. 1:24-cv-00199

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

Plaintiff Edsal Manufacturing Company, LLC sues Freedom Plastics, Inc. for breach of contract (Count I), unjust enrichment (Count II), and conversion (Count III).[1] [22]. Defendant moves under Federal Rule of Civil Procedure 12(b)(2) to dismiss the complaint for lack of personal jurisdiction, and alternatively, under Rule 12(b)(6) to dismiss Count I for failure to state a claim. [28]. For the reasons set forth below, this Court denies Defendant's motion. *Id.*

## I.    The Complaint's Allegations[2]

Plaintiff is a storage and furniture company that markets and sells its products to consumers throughout the United States. [22] ¶ 15. Plaintiff's products include industrial shelving, pallet and bulk storage racks, storage bins, cabinets, lockers,

---

[1] Plaintiff voluntarily amended its complaint in response to Defendant's prior motion to dismiss, [11]. The operative complaint is Plaintiff's First Amended Complaint, [22].

[2] The Court draws the facts from the Amended Complaint [22] and the exhibits attached to it, which it takes as true for purposes of resolving the motion to dismiss. *See Bible v. United State Aid Funds, Inc.,* 799 F.3d 633, 640 (7th Cir. 2015).

carts, benches, desks, and tools. *Id.* at ¶ 16. Prior to 2019, Plaintiff had a production arrangement with Kartel Plastics, in which Kartel produced products for Plaintiff for shipment to Plaintiff's customers throughout the country, including in Illinois. *Id.* at ¶ 16. Defendant subsequently acquired Kartel. *Id.* at ¶¶ 17–18.

Following the acquisition, on October 7, 2019, Defendant's representatives flew to Chicago for a meeting with Plaintiff's representatives to solicit Plaintiff's continued business. *Id.* At that meeting, the companies' representatives discussed terms for a formal production agreement between them, including pricing and payment terms. *Id.* at ¶¶ 21, 23. Subsequently, the companies entered into a production agreement, under which Defendant agreed to fulfill the purchase orders submitted by Plaintiff and then ship the products either to Plaintiff's Chicago facility or directly to Plaintiff's customers throughout the country, including in Illinois. *Id.* at ¶¶ 23–29. Upon receipt of the products, Plaintiff's customers would tender payment to Plaintiff. *Id.* at ¶ 30.

From October 2019 through August 2021, Plaintiff paid Defendant over $15,000,000 to produce and ship products on its behalf. *Id.* at ¶ 38. During this period, Defendant loaded and shipped 16,167 of Plaintiff's products to 1,937 customers in Illinois. *Id.* at ¶ 39. The business relationship appeared to operate smoothly until December 2021, when Plaintiff "became aware" that Defendant "wrongfully withheld" approximately 25,931 resin shelves and totes Plaintiff previously paid for to be shipped to its customers. *Id.* at ¶ 40. Rather than deliver

the products to Plaintiff's customers, Defendant allegedly sold the shelves and totes and retained over $421,378.07 in sales proceeds. *Id*. at ¶ 42.

In response to these events, on August 8, 2023, Plaintiff's representatives met with Defendant's manager, Greg Smith, to resolve the dispute. *Id*. at ¶ 45. During the meeting, Smith acknowledged that Defendant had been in possession of Plaintiff's paid-for inventory, but he had no idea where it went, and he offered to produce replacement units. *Id*. at ¶¶ 46–47. Plaintiff insisted upon compensation for inventory and lost sales, which Defendant refused. *Id*. at ¶ 49. As a result, Plaintiff initiated this lawsuit. *Id*. at ¶¶ 48–50. Defendant moves to dismiss under Fed. R. Civ. P. 12(b)(2) and 12(b)(6), [28].

## II.    Legal Standards

### A.    Rule 12(b)(2) Standard

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a case when it lacks personal jurisdiction over a party. While a complaint need not include facts alleging personal jurisdiction, when a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff then bears the burden of demonstrating that jurisdiction exists. *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). When, as here, a court rules upon a motion to dismiss based upon the submission of written materials without an evidentiary hearing, the plaintiff "need only make a *prima facie* case of personal jurisdiction." *Id*. If the defendant submits evidence in opposition to the exercise of jurisdiction, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction."

*Id.* at 783.   In evaluating whether the *prima facie* standard has been satisfied, the Court must resolve all disputes in the evidence concerning relevant facts in the plaintiff's favor.  *Id.*

### B.        Rule 12(b)(6) Standard

Federal Rule 12(b)(6) requires a court to dismiss a claim that has failed to provide grounds upon which relief can be granted.  To survive a motion under Rule 12(b)(6), a complaint must not only provide Defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A claim has facial plausibility when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Although the complaint need not include detailed factual allegations, plaintiff's obligation to provide the grounds for its entitlement to relief requires more than mere labels and conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Rather, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together"; in ruling on the motion, the Court asks whether these things could have happened, not whether they did happen. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

On a motion under Rule 12(b)(6), this Court accepts as true all well-pled facts in the complaint and draws all reasonable inferences from those facts in Plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).  The Court "need

not accept as true statements of law or unsupported conclusory factual allegations."
*Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021).

## III. Analysis

Defendant moves to dismiss all claims for lack of personal jurisdiction, and to dismiss Count I for failure to state a claim. [28]. Because personal jurisdiction presents a threshold question, this Court addresses that issue first.

### A. Personal Jurisdiction

A federal district court sitting in diversity applies the personal jurisdiction rules of the state in which it sits. *Webber v. Armslist LLC*, 70 F.4th 945, 953 (7th Cir. 2023) (quoting *Kipp v. Ski Enterprise Corp. of Wisconsin, Inc.*, 783 F.3d 695, 697 (7th Cir. 2015)). Here, Illinois law supplies the relevant rules. The Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment. 735 Ill. Comp. Stat. 5/2-209(C). Because the Seventh Circuit has found no "operative difference" between the two constitutional limits, *Illinois v. Hemi Group LLC*, 622 F.3d 754, 756–57 (7th Cir. 2010), the statutory and constitutional inquiries merge, *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). Thus, the Court will limit its analysis to whether the exercise of personal jurisdiction in this case comports with the Due Process Clause. *Id.*

The Due Process Clause permits the exercise of personal jurisdiction over an out-of-state defendant when the defendant possesses "minimum contacts" with the forum state such that the maintenance of the suit "does not offend traditional notions

of fair play and substantial justice." *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Personal jurisdiction may be "general or "specific." *Felland v. Clifton*, 682 F.3d 664, 673 (7th Cir. 2012), but only specific jurisdiction needs to be considered here.[3]

Specific jurisdiction stems from the relationship between "the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The exercise of specific jurisdiction requires: "(1) purposeful availment—the defendant must have purposefully directed his activities at the forum state or purposefully availed himself to the privilege of conducting business in the forum; (2) relatedness—the alleged injury must arise out of or relate to the defendant's forum-related activities; and (3) fairness—the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *B.D. by and through Myer and Samsung SDI Co., Ltd.*, 91 F.4th 856, 861 (7th Cir. 2024) (first quoting *Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021), then quoting *Tamburo*, 601 F.3d at 702).

Defendant argues only that it lacks sufficient minimum contacts with Illinois to be subject to specific personal jurisdiction. [29] at 5. The Court addresses this issue first.

### 1.    Minimum Contacts

To be subject to specific personal jurisdiction in the forum state, the defendant must have purposefully established "minimum contacts" with the state "that demonstrate a real relationship with the state with respect to the transaction at

---

[3] Neither party contends that Defendant is subject to general personal jurisdiction.

issue," rather than merely "random, fortuitous, or attenuated" contacts. *Northern Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (citing *Burger King*, 471 U.S. at 474). This purposeful-availment requirement ensures that the defendant "retains sufficient, albeit minimal, ability to structure its activities so that it can reasonably anticipate the jurisdictions in which it will be required to answer for its conduct." *Purdue Rsch. Found.*, 338 F.3d at 780. (citing *Burger King*, 471 U.S. at 475).

Minimal contacts exist in the forum state where a corporation reaches out beyond one state and creates continuing obligations with citizens the forum state. *North v. Ubiquity, Inc.*, 72 F.4th 221, 225 (7th Cir. 2023) (quoting *Travelers Health Ass'n. v. Virginia*, 339 U.S. 643, 647 (1950)). In such circumstances, the corporation has purposely availed itself of the privilege of conducting business in the forum state and its activities are shielded by the forum state's laws. *Ubiquity*, 72 F.4th at 225; *Burger King*, 471 U.S. at 475. Therefore, "it is presumptively not unreasonable" to require the defendant "to submit to the burdens of litigation in that forum as well." *Id.*

On the other hand, contracting "with an out of-of-state party *alone*" does not "automatically establish sufficient minimum contacts with the forum state." *Id.* Rather, in assessing personal jurisdiction, the Supreme Court has instructed courts to take a "highly realistic" approach in contract cases that considers the parties' "prior negotiations, contemplated future consequences, the terms of the contract, and the parties' actual course of dealing with each other." *Id.* (citing *Burger King v.*

*Rudzewicz*, 471 U.S. 462, 478 (1985). Where, as here, the parties engage in an ongoing commercial relationship involving repeated transactions over time, all contacts with the forum state that bear upon the substantive legal dispute between the parties or inform the court about the substance of the agreement at issue, remain relevant. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997). The Court examines these contacts to assess whether Defendant has "deliberately engaged in significant activities within the forum state, or "created continuing obligations between itself and a resident of the forum," such that it could "reasonably anticipate" that he could be hauled into court there. *Northern Grain Mktg.*, 743 F.3d at 493.

In *Burger King*, the plaintiff, sued one of its franchisees, a Michigan corporation, for breach of the operative franchise agreement in Florida. 471 U.S. 462, 478–485 (1985). Although the defendant never stepped foot in Florida, the Supreme Court held that the Michigan defendant had sufficient contacts to render it subject to specific jurisdiction in Florida, where: (1) the defendant "reached out beyond Michigan and negotiated with a Florida corporation" to establish a franchise agreement; (2) the parties' twenty-year contract "envisioned continuing and wide-reaching contacts" with the forum state; and (3) the contract documents and the parties' course of dealing put the defendant on notice that he could be subject to suit in Florida, including that decision-making authority and operations occurred in Burger King's Miami headquarters, the defendant directed all communications and

payments to Florida, and the franchise documents provided that all disputes would be governed by Florida law. *Id.*

Here, as in *Burger King*, Defendant maintained sufficient contacts with Illinois such that the exercise of personal jurisdiction over it would not offend due process. *Northern Grain Mktg.*, 743 F.3d at 493. First, Defendant reached out beyond Wyoming, its state of incorporation and place of headquarters, to contract with Plaintiff, an Illinois resident.[4] *See* [22] ¶¶ 8–9. Second, in October 2019, Defendant's executives flew to Chicago, Illinois to meet with Plaintiff's executives concerning their ongoing business relationship and, while in Chicago, negotiated terms for a significant production agreement.[5] [22-1]. *See Madison Consulting Group v. State of S.C.*, 752 F.2d 1993, 1995 (7th Cir. 1985) (holding contacts sufficient for personal jurisdiction where defendant's business partner flew to forum state for a meeting to solicit plaintiff's business and initiate negotiations and some of contract was performed in forum state); *Jacobs/Kahan & Co. v. Marsh*, 740 F.2d 587, 592 (7th Cir.

---

[4] Plaintiff is a Delaware limited liability company with a principal place of business in Chicago, Illinois. [22] ¶ 8.

[5] Defendant disputes that the parties specifically discussed pricing and payment terms at their October 2019 meeting in Chicago, claiming that they only discussed ownership of certain molds used in products that Defendant produced for Plaintiff as part of their production agreement. *See* [29-2]. According to Defendant, the parties' business relationship predated that meeting. *Id.* Plaintiff has submitted countervailing evidence that pricing and payment terms were discussed at the October 2019 meeting, and that Defendant flew to Chicago to solicit Plaintiff's continued business after Defendant acquired Kartel, Plaintiff's former business partner. *See* [32-2] ¶¶ 7, 12. At this stage, drawing all reasonable inferences in Plaintiff's favor, the October 2019 meeting was for the purpose of soliciting Plaintiff's future business. *Purdue Rsch. Found., S.A.,* 338 F.3d at 782 (citing *RAR,* 107 F.3d at 1275) (stating that the plaintiff "is entitled to have any conflicts in the affidavits resolved in its favor"). Nevertheless, as Plaintiff suggests in its response, [232] at 12, n.3, this issue does not contradict the undisputed allegation that in October 2019, Defendant's executives flew to Chicago in connection with their business relationship. Considering this fact in conjunction with the other undisputed relevant contacts, Defendant has sufficient "minimum contacts" with Illinois.

1984) (holding defendant purposefully availed itself of privilege of conducting activities in forum state where defendant traveled to forum state to transact business); *Deluxe Ice Cream*, *Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1213 (7th Cir. 1984) (same). As for terms of the agreement—even though Defendant initially shipped products to its third-party manufacturer in California as provided by Plaintiff's purchase orders—Defendant also agreed to ship products directly to Plaintiff's customers in Illinois, [32-2] at 2, ¶ 19; [32-6]; [29-3] at 2. Plaintiff has submitted evidence that Defendant loaded and shipped at least 16,167 products to 1,937 customers in Illinois during the period from October 2019 through August 2021. *See* [32-2] ¶¶ 19, 23, 30–31; [32-7].

Moreover, the parties' course of dealing reflects an agreement with substantial connection to Illinois; for example, several of the purchase orders Defendant fulfilled include an Illinois forum selection clause,[6] and Defendant sent all correspondence and invoices to Plaintiff in Illinois. *See* [22-2]; [32-2] at 4, ¶ 20. Through these purposeful contacts, Defendant enjoyed the benefits resulting from conducting business with an Illinois resident. And the parties' production agreement and

---

[6] In some cases, a forum selection clause can confer personal jurisdiction even in the absence of minimum contacts. *See, e.g, TrueServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 589 (7th Cir. 2005) (quoting *RAR*, 107 F.3d at 1280) (noting "personal jurisdiction is waivable...and parties, can, through forum selection clauses and the like, easily contract around any rule we promulgate."). Defendant argues that the forum selection clause here cannot confer personal jurisdiction in this case absent sufficient minimum contacts, because Plaintiff does not allege that the 25,931 shelves and totes were the subject of the purchase orders referencing Plaintiff's terms and conditions, including the forum selection clause. [29] at 9. In other words, it remains unclear whether Defendant had accepted those terms with respect to this dispute. The Court agrees, but as Plaintiff notes in its response brief, *see* [32] at 12–13, n.4, the record otherwise supports the exercise of personal jurisdiction over Defendant predicated upon Defendant's suit-related contacts. The Court need not rely solely upon the forum selection clause.

resulting purchase orders, along with their course of dealing, contemplate continuing contacts with Illinois. The "minimum contacts" test thus remains satisfied.

## 2. Relatedness

Having determined that Defendant had sufficient minimum contacts with Illinois, the Court next considers whether its minimum contacts with the forum state are suit-related; that is, whether Plaintiff's claims "arise out of or relate to" those contacts. *Samsung*, 91 F.4th at 861–62 (first citing *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 400 (2020), then citing *Advanced Tactical Ordinance Sys. v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014)).

Recently, the Supreme Court clarified that "a defendant's contacts with the forum may 'relate to' the plaintiff's claims even in the absence of a 'strict causal relationship' between the contacts and claims." *See Samsung,* 91 F.4th at 861–62 (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021)). Due process requires only that the "relationship among the defendant, the forum, and the litigation" remain "close enough to support specific jurisdiction." *Samsung,* 91 F.4th at 861–62 (citing *Ford,* 592 U.S. at 471). Thus, the conduct comprising the "minimum contacts" and the "litigation" must merely be related. *Samsung,* 91 F.4th at 861–62.

Here, the relevant contacts include Defendant entering into a production agreement with an Illinois resident, and as part of that agreement, shipping tens of thousands of products to Plaintiff's customers in Illinois and sending numerous invoices to Plaintiff in Illinois. Plaintiff sues Defendant here based upon Defendant's breach of their agreement, by failing to ship certain shelves and totes to Plaintiff's

11

customers in Illinois, after Plaintiff had paid Defendant $274,000 to do so—payment which presumably occurred in response to an invoice Defendant sent to Illinois. [22] ¶¶ 3–4. Plaintiff's claims thus "relate to" Defendant's contacts with Illinois, such that the relationship between Defendant, the forum, and the litigation, are "close enough" to satisfy due process. *Ford,* 592 U.S. at 471.

### 3. Fairness

The final inquiry in the Court's analysis is whether the exercise of personal jurisdiction over Defendant would offend "traditional notions of fair play and substantial justice." *See Int'l Shoe*, 326 U.S. at 316. In considering fairness, the Court looks to several factors, including: "the burden on the defendant, the interests of the plaintiff and the forum state, the interest in efficient resolution of the dispute, and the shared interest of states in furthering certain substantive social policy." *Samsung*, 91 F.4th at 862 (citing *Burger King*, 471 U.S. at 477). Where "a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction," however, he "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477; *see also Purdue Rsch. Found.*, 339 F.3d at 781 (noting that these "factors rarely will justify a determination against personal jurisdiction").

Here, the "fairness" factors weigh in favor of exercising jurisdiction over Defendant. First, although Defendant is out-of-state and would therefore need to travel to Illinois to defend this lawsuit, "out-of-state defendants *always* face a burden," *see Felland*, 682 F.3d at 677 (emphasis in original), and the burden here is

not unconstitutional. Indeed, the State of Illinois has a legitimate interest in adjudicating a dispute within its borders, where Defendant actively sought to do business, and then allegedly breached a contract negotiated in Illinois with an Illinois citizens. *See, e.g., Tata Int'l Metals, (Americas) Ltd. v. Jurt Orban Partners,* LLC, 482 F. Supp. 3d 737, at 749 (N.D. Ill. 2020) (internal citations omitted) (finding Illinois had significant interest in breach of contract case involving one of its citizens); *see also uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 432 (7th Cir. 2010) (noting "Illinois's significant interest in providing a forum for its residents to seek relief when they suffer harm in Illinois from a wrong that occurred at least in part in Illinois"). Additionally, Plaintiff's interest in obtaining convenient and effective relief remains substantial, as its headquarters and the pertinent records are in Illinois. Finally, the states have a "shared interest in enforcing contracts and holding citizens of other states accountable for breaching contracts with their residents." *Tata*, 482 F. Supp. 3d at 749. Therefore, the exercise of personal jurisdiction over Defendant in Illinois does not offend "traditional notions of fair play and substantial justice." *See Int'l Shoe*, 326 U.S. at 316

Having made a prima facie showing on all three elements of specific personal jurisdiction, Plaintiff has satisfied its burden. Accordingly, the Court denies Defendant's motion to dismiss this case for lack of personal jurisdiction, [28].

## B.     Plaintiff's Conversion Claim (Count III)

Specific personal jurisdiction is claim-specific: there must be personal jurisdiction over the defendant as to each claim when considered separately. *See MG*

13

*Designs Assocs. Corp. v. Costar Realty Info., Inc.*, 224 F. Supp. 2d 621, 629 (N.D. Ill. 2016). Here, the parties' personal jurisdiction arguments address only Plaintiff's contract-based claims, because Plaintiff's conversion claim flows from the alleged breach of contract, *i.e.,* Defendant's failure to ship certain shelves and totes to Plaintiff's customers that Plaintiff had paid for and thus had a right to possess.

Conversion is an intentional tort. Thus, to make a prima facie showing of personal jurisdiction, Plaintiff must establish that Defendant's conduct was "purposefully directed" at the forum state, by showing: (1) intentional conduct (or "intentional and allegedly tortious" conduct) (2) expressly aimed at the forum state (3) with Defendant's knowledge that the effects would be felt—that is, Plaintiff would be injured—in the forum state. *See Felland*, 682 F.3d at 674–75 (citing *Calder v. Jones,* 465 U.S. 783, 789–90 (1984)). If minimum contacts are shown, then the Plaintiff must also show relatedness and fairness. *See Felland*, 682 F.3d at 674–75.

The propriety of personal jurisdiction as to Plaintiff's conversion claim remains unclear.[7] But even personal jurisdiction lies as to this claim, the claim nonetheless fails because of the economic loss doctrine.

---

[7] On one hand, the operative facts here pertaining to the alleged conversion occurred outside of Illinois. *See Poska v. Machacek*, No. 17 C 50313, 2018 WL 11219793, at *4–5 (N.D. Ill. Sept. 28, 2018) (explaining that while there is a "dearth of case law in the Seventh Circuit and district courts within it concerning the "expressly aimed" requirement as to conversion claims, "district courts in other circuits examining whether conversion of a plaintiff's property outside a forum state can demonstrate that a defendant has 'expressly aimed' its conduct at the forum state have concluded that it does not."); *Viracon, Inc. v. J & L Curtain Wall LLC,* 929 F. Supp. 2d 878, 885–86 (D. Minn. 2013) ("[T]he challenged conduct must be uniquely aimed at the forum state, which requires more than knowledge that a Minnesota company will suffer consequences from the conduct. This is all [the plaintiff] has proffered here." (internal citations omitted)); *Power Beverage LLC v. Side Pocket Foods Co.,* C/A No. 06:12–931–TMC, 2013 WL 227875, at *6 (D.S.C. Jan. 22, 2013) ("[T]he conversion claim cannot meet the second element because the legal injury occasioned by the tort of conversion is deemed to occur where the actual conversion takes place. And by [the plaintiff's] own allegations, the [converted subject matters] were converted in Oregon, not South Carolina."). On the other hand, pursuant to the

That doctrine, recognized under both Illinois and California law, prevents recovery in tort for purely economic loss between contracting parties. *See Wigon v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012) (Illinois law); *Moorman Mfg. Co. v. National Tank Co.*, 435 N.E.2d 443, 453 (Ill. 1982) (Illinois law); *Fine v. Kansas City Life Ins. Co.,* 627 F. Supp. 3d 1153, 1161 (C.D. Cal. 2022) (citing *Robinson Helicopter Co. v. Dana Corp.,* 102 P.3d 268 (2004) ("Under California law, the economic loss rule requires a party 'to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise."")).

Stated differently, when a contract sets out the duties between parties, recovery should be limited to contract damages even though recovery in tort would otherwise be available under the common law. *See R.J. O'Brien & Associates, Inc. v. Forman*, 298 F.3d 653, 657 (7th Cir. 2002) (Illinois law); *St. George Investments, LLC v. QuamTel, Inc.*, No. 12-cv-9186, 2014 WL 812157, at *9 (N.D. Ill. Mar. 3. 2014) (Illinois law); *Fine*, 627 F. Supp. 3d at 1161 ("Conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law.").

doctrine of pendent personal jurisdiction, "a district court has discretion to exercise personal jurisdiction over a claim that it ordinarily lacks personal jurisdiction when that claim arises out of the same common nucleus" of operative facts as does a claim that is within the jurisdiction of the court. *CSX Transportation, Inc. v. Zayo Grp., LLC*, No. 121 CV 02859, 2022 WL 2356075, at *3 (S.D. Ind. Mar. 4. 2022), *report and recommendation adopted*, No. 121 CV 02859 (S.D. Ind. June 3, 2022) (citing 4A Wright & Miller, *Federal Practice & Procedure* § 1069.7 (4th ed.)); *see also Robinson Engineering Co. Pension Plan & Trust v. George*, 223 F.3d 445, 449 (7th Cir. 2000) (expressly recognizing pendent personal jurisdiction doctrine).

Here, Plaintiff alleges a "simple breach of contract lawsuit" over a production agreement that "went wrong." *Meadoworks, LLC v. Linear Mold & Eng'g, LLC,* No. 1:19-CV-7896, 2022 WL 5365977, at *2 (N.D. Ill. Sept. 8, 2020). Plaintiff's alleged interest in the 25,931 shelves and totes arose only from the contract between it and Defendant. *See id.* (dismissing conversion claim because although "a duty certainly exists not to take another's property, in this case, that duty is completely encompassed by the alleged contract for the sale of the same goods that Plaintiff's conversion claim is rooted in"); *see also Fine*, 627 F. Supp. 3d at 1161 (citing *Expedited Packages, LLC v. Beavex Inc.*, No. 15-00721, 2015 WL 13357436, at *4 (C.D. Cal. Sept. 10, 2015) ("Whether the economic loss rule bars a conversion claim turns on "whether the ownership interest that formed the basis for the conversion claim preexisted the contract or arises from the contract. Where the interest preexisted the contract, a conversion claim will lie.")). And the Complaint alleges purely economic losses, namely, lost profits. *See Moorman*, 435 N.E. 2d at 449 (defining "economic loss" as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits-without any claim of personal injury or damage to other property…").

Further, Plaintiff does not allege facts suggesting any of the recognized exceptions to the economic loss doctrine apply. *See Am. United Logistics, Inc. v. Catellus Dev. Corp.,* 319 F.3d 921, 927, 927 n.4 (7th Cir. 2003) (discussing exceptions)

(Illinois law)[8]; *Body Jewelz, Inc. v. Valley Forge Ins. Co.,* 241 F. Supp. 3d 1084, 1092 (C.D. Cal. 2017) (same) (California law).[9]

Therefore, the economic loss doctrine bars Plaintiff's conversion claim and the Court dismisses Count III without prejudice.

### C.    Failure to State a Claim: Breach of Contract

Defendant alternatively moves under Rule 12(b)(6) to dismiss Plaintiff's breach of contract claim (Count I).  [29] at 13.  The Complaint alleges that Plaintiff and Defendant had a production agreement that required Defendant to produce products requested via purchase orders and ship them to Plaintiff or its customers. [22] ¶¶ 23, 27.  It further alleges that Defendant breached this agreement when it failed to ship 25,931 resin shelves and totes to Plaintiff's customers, after Plaintiff had paid Defendant $274,000 to do so.  *Id.* ¶ 56.

The parties dispute whether Illinois or California law applies to this dispute. But this Court need not resolve the choice of law issue because the pleading requirements are the same in both states.  To state a viable breach of contract claim, Plaintiff must allege: "(1) the existence of a valid and enforceable contract; (2)

---

[8] Under Illinois law, the exceptions to the economic loss doctrine are: "(1) where the plaintiff sustained damage, *i.e.,* personal injury or property damage, resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, *i.e.,* fraud; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." *In re Chicago Flood Litig.,* 680 N.E.2d 265, 275 (1997) (cleaned up), *holding modified on other grounds by Andrews v. Metro. Water Reclamation Dist. of Greater Chicago,* 160 N.E.3d 895 (Ill. 2019).

[9] Under California law, the exceptions to the economic loss doctrine are cases involving: "(1) a personal injury, (2) physical damage to property, (3) a "special relationship," or (4) some other common law exception to the rule.  *See Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.,* 315 Fed. App'x. 603, 605 (9th Cir. 2008) (citing *J'Aire Corp. v. Gregory,* 598 P.2d 60 (1979)).

substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (Illinois law)); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 610 (9th Cir. 2020) (quoting *Oasis West Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011) (California law)).

Defendant first argues that the purchase orders annexed to the Complaint reflect that any agreement reached was between Defendant and Sandusky Cabinets, not between Defendant and Plaintiff. [29] at 13. But the Complaint alleges that Plaintiff issued purchase orders to Defendant as part of its production agreement with Defendant, and those purchase orders, attached to the complaint, are "Edsal Manufacturing Company purchase orders" and expressly incorporate Plaintiff's terms and conditions. [22-2]. Upon fulfilling those purchase orders, the Complaint alleges, Defendant issued invoices for payment directly to Plaintiff in Chicago, not to Sandusky Cabinets' facility in California, and Plaintiff would pay them. [22] ¶¶ 28–29. Drawing all reasonable inferences in Plaintiff's favor, the Court concludes that the Complaint sufficiently alleges that Plaintiff was a party to the production agreement with Defendant.

Defendant next argues that Plaintiff's breach of contract claim fails because Plaintiff has failed to identify which of the 500 purchase orders Defendant allegedly breached, and the allegations establish that Defendant complied with the purchase

orders when it delivered the goods to its third-party manufacturer's facility in Colton, California. [29] at 15.

Although the purchase orders only specify the initial shipment of products to Defendant's third-party manufacturer in Colton, California, Plaintiff does not allege that Defendant failed to *produce* the requested products pursuant to the purchase orders. *See id.* at 14. Thus, the fact that Plaintiff has not identified a purchase order Defendant failed to fulfill is not fatal to Plaintiff's breach of contract claim. Instead, Plaintiff alleges that Defendant agreed (after fulfilling the purchase orders and sending the products to California) to ship the products to Plaintiff's customers.[10] According to Plaintiff, Defendant failed to ship 25,931 resin shelves and totes to Plaintiff's customers, admitted this failure, and offered to supply replacement units. *Id.* ¶¶ 40–43, 47. Accordingly, Plaintiff has sufficiently alleged breach. The Court therefore denies Defendant's motion to dismiss Count I for failure to state a claim.

---

[10] As alleged, it is not clear whether Defendant's agreement to ship products to Plaintiff's customers is contained in an express contract, but the Complaint sufficiently alleges an implied-in-fact contract arising from the conduct of the parties. Both Illinois and California law recognize implied-in-fact contracts. *See e.g., Mewawala v. Middleman*, 601 F. Supp. 3d 574, 605–06 (N.D. Cal. 2022); *Nw. Mem'l Healthcare v. Aetna Better Health of Illinois, Inc.*, No. 1:21-CV-02054, 2023 WL 2745549, at *9 (N.D. Ill. Mar. 31, 2023). Implied-in-fact contracts require a meeting of the minds, but may be proven by circumstances showing that the parties intended to contract and by the general course of dealing between them. *Dynegy Mktg. & Trade v. Multuit Corp.*, 648 F.3d 506, 515 (7th Cir. 2011); *Mewawala* 601 F. Supp. 3d at 605–06 ("An implied-in-fact contract is based on the conduct of the parties. Like an express contract, an implied-in-fact contract requires an ascertained agreement of the parties."). Here, the Complaint alleges that as part of Plaintiff's production agreement with Defendant, it would pay Defendant for the production and shipment of products to Plaintiff's customers, [22] ¶ 31, and from October 2019 through August 2021, Plaintiff paid Defendant to load and ship 16,167 products to its customers in Illinois, *Id.* at ¶ 39. Further, the requisite meeting of the minds can be plausibly inferred from the emails between Defendant and Plaintiff, in which Defendant indicates that "any requests for shipments need to be provided in a spreadsheet with the data" in order for Defendant to "manage the shipping processes," [22-4], as well as the 17-page spreadsheet reflecting Defendant's shipments to Plaintiff's customers in Illinois, [22-5]. These allegations plausibly allege a contract at this stage. Whether Plaintiff can ultimately produce sufficient evidence to support Defendant's agreement to ship the 25,931 resin shelves and totes to Plaintiff's customers remains a question for a later part of these proceedings.

## IV.    Conclusion

For the reasons explained above, the Court denies Defendant's motion to dismiss for lack of personal jurisdiction and for failure to state a claim, [28], but dismisses Plaintiff's conversion claim (Count III) without prejudice based upon the economic loss doctrine.

Dated: April 3, 2025                    Entered:

John Robert Blakey
United States District Judge